UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WHEELING & LAKE ERIE RAILWAY CO., | ) ) ) |
| Appellant, | ) ) |
| v. | ) 1:18-cv-00262-JDL ) |
| ROBERT J. KEACH, in his capacity as the Estate Representative for MONTREAL MAINE & ATLANTIC RAILWAY, LTD., | ) ) ) ) ) |
| Appellee. | ) |

**ORDER ON MOTION TO DISMISS**

Robert J. Keach, the Estate Representative of the estate of Montreal Maine & Atlantic Railway, Ltd. ("MMA"), has moved to dismiss as moot Wheeling & Lake Erie Railway Co.'s ("Wheeling") appeal from a judgment of the United States Bankruptcy Court for the District of Maine (the "Bankruptcy Order"), which denied Wheeling's secured claim against the estate arising from certain settlement proceeds connected to the 2013 Lac-Mégantic train derailment tragedy. The Estate Representative argues that Wheeling's appeal should be dismissed as moot because the parties agreed that a five million dollar set-aside fund would be the exclusive source of potential recovery by Wheeling; the funds were subsequently disbursed by the Estate Representative upon the issuance of the Bankruptcy Order; and there is therefore no effective judicial remedy that could provide actual relief to Wheeling. For the reasons

that follow, I conclude that Wheeling's appeal is not moot and I deny the Estate Representative's motion.

## I. BACKGROUND

On July 6, 2013, MMA's freight Train 282, which was transporting crude oil, derailed in Lac-Mégantic, Quebec, Canada, killing 48 people and causing catastrophic damage to the town. MMA subsequently filed for bankruptcy in the District of Maine—as well as in Canadian courts—because of the losses and liabilities arising from the derailment. After filing for bankruptcy, the Estate Representative (then serving as the Estate Trustee) commenced litigation against various parties, including the shipper of the crude oil, Western Petroleum Company, together with its corporate affiliates World Fuel Services Corporation and World Fuel Services, Inc. (collectively, the "Shipper"), for their respective roles in causing the disaster. In 2015, the Estate Representative entered into a global settlement with the Shipper, whereby the Shipper agreed to contribute 110 million dollars to a settlement fund in exchange for the release of all claims against it arising from the Lac-Mégantic derailment. Wheeling subsequently initiated this litigation seeking, in relevant part, a declaratory judgment that it held a valid, perfected, and enforceable security interest in MMA's contractual and/or statutory and regulatory claims against the Shipper that were released as part of the settlement.

In 2015, the Bankruptcy Court entered an order confirming the Trustee's "Revised First Amended Plan of Liquidation" (the "Confirmation Plan"). Paragraph 84 of the Confirmation Plan—which was added to resolve Wheeling's objection to the plan—required the Estate Representative to set aside $5,032,134.12 (the "Set-Aside

Fund") "pending further order of the Bankruptcy Court" to secure payment to Wheeling if Wheeling was later found to be entitled to payment on its security interest.

On June 22, 2018, the Bankruptcy Court issued an oral decision ruling that MMA had no contractual, statutory, or regulatory claims against the Shipper to which Wheeling's security interest attached, and even if such claims existed, Wheeling had failed to establish that they had any net value. Immediately after the decision was announced, counsel for Wheeling made an oral motion to stay, which the court denied. Later that day, the Estate Representative released the money in the Set-Aside Fund to the Canadian Monitor (essentially the Estate Representative's Canadian counterpart in the parallel Canadian bankruptcy proceedings) in keeping with the Confirmation Plan. There is no evidence before me as to whether the money from the Set-Aside Fund has been disbursed by or remains with the Canadian Monitor. Wheeling's appeal from the Bankruptcy Order to this Court is taken pursuant to 28 U.S.C. § 158 (2012) and Rule 8003 of the Federal Rules of Bankruptcy Procedure.

## II. LEGAL ANALYSIS

"Mootness in bankruptcy appellate proceedings, as elsewhere, is premised on jurisdictional and equitable considerations stemming from the impracticability of fashioning fair and effective judicial relief. Jurisdictional concerns may arise from the constitutional limitations imposed on the exercise of Article III judicial power in circumstances where no effective remedy can be provided, or from a loss of jurisdiction over the *res* or the parties, before or during the appeal, which renders the appellate

3

court powerless to grant the requested relief." *Rochman v. Northeast Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.)*, 963 F.2d 469, 471 (1st Cir. 1992) (internal citations and footnotes omitted). "The 'equitable' mootness test inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible." *Hicks, Musc & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 48 (1st Cir. 1998). "The party arguing for dismissal bears the burden of establishing equitable mootness." *Mission Prod. Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC)*, 558 B.R. 500, 514 (B.A.P. 1st Cir. 2016), *aff'd* 879 F.3d 376 (1st Cir. 2018).

The Estate Representative argues that Wheeling's appeal of the Bankruptcy Order is moot because Paragraph 84 of the Confirmation Plan established the Set-Aside Fund as the exclusive source of Wheeling's potential recovery, and that because the money has been released to the Canadian Monitor it is entirely within the jurisdiction of Canadian courts. Paragraph 84 reads:

> In resolution of the Wheeling Objection: (a) nothing in this Order, the Releases and Injunctions or the Settlement Agreements shall limit or affect Wheeling's ability to contend, and the Trustee's ability to contest, that Wheeling's security interest, if any, attaches to the Settlement Payments (whether as original collateral, proceeds, products or otherwise); and (b) in the event the Bankruptcy Court has not determined, prior to the Initial Distribution Date, the amount of the Allowed Secured Claim of Wheeling as of such date, and including, without limitation, whether any portion of the Settlement Payments constitutes collateral of Wheeling as of such date, the Trustee shall set aside, and not distribute pending further order of the Bankruptcy Court,

4

> $5,032,134.12 to secure any payment, to the extent required, with respect to such Allowed Secured Claim, when and if determined. . . .

ECF No. 2 at 7.

Nothing in the plain language of Paragraph 84 establishes that the Set-Aside Fund is the exclusive source of funds from which Wheeling can recover if successful on its claim. To the contrary, Paragraph 84 states in part (a) that "nothing in this Order . . . shall *limit or affect* Wheeling's ability to contend . . . that Wheeling's security interest, if any, attaches to the Settlement Payments . . . ." *Id.* (emphasis added). This language reasonably supports Wheeling's argument, *see* ECF No. 8 at 7, albeit indirectly, that the Set-Aside Fund constituted an *additional* form of protection of its interest, rather than a curtailment or limitation of its existing protections. Part (b) of Paragraph 84 establishes the Set-Aside Fund, but contains no indication that the fund is the exclusive source from which Wheeling's claim, if successful, must be satisfied. Therefore, Paragraph 84 does not itself render Wheeling's appeal moot.

Next, the Estate Representative argues that judicial estoppel also provides a basis for dismissal. During the September 24, 2015, bankruptcy court hearing addressing objections to the Confirmation Plan, counsel for Wheeling made the following statement:

> Now, the solution, I believe, is fairly simple -- and, again, I apologize if I haven't been clear in explaining it. Wheeling is agreeing that if there is a fund set aside in the amount of its claim, it would look only to that fund to satisfy any interest that it had. But I simply want the interests that are within the universe of interests that Wheeling might establish to include not only interests that might've attached to settlement proceeds received but interests that might've attached to claims that were released -- the other side of the coin. But in any case, if there's $3

5

million, for example, or 4 million, whatever the number is, put aside for Wheeling, we would not look to recover that from any resource other than a fund set aside once that we determined that Wheeling had a right that was either paid or had a right that was released. That's the issue.

ECF No. 2 at 8 (emphasis removed). The Estate Representative contends that the foregoing constitutes a concession that Wheeling would not seek recovery from assets other than the Set-Aside Fund. Given that concession, the argument goes, the doctrine of judicial estoppel prevents Wheeling from reversing its position now.

Wheeling's counsel's representations to the Bankruptcy Court can reasonably be understood to mean that Wheeling would look only to the Set-Aside Fund to satisfy its claim, so long as the fund exists at the time it is determined that Wheeling has a right to recover. Wheeling's counsel's statement to the Bankruptcy Court did not indicate that Wheeling had agreed that all of its federal and state law rights would be waived upon the Estate Representative's release of the money in the Set-Aside Fund, nor that Wheeling had waived its right to appeal from an adverse decision of the Bankruptcy Court denying its claim. *See* ECF No. 2 at 11. Absent an express waiver by Wheeling of all its rights, I will not infer such a waiver based on the somewhat ambiguous statement made extemporaneously by Wheeling's counsel in open court.

Finally, the Estate Representative argued at the September 7 motion hearing that Wheeling's failure to diligently seek a stay pending appeal also renders this appeal equitably moot.[1] *See Old Cold*, 558 B.R. at 513 ("The doctrine of equitable

---

[1] Wheeling informally requested a stay on June 22, 2018, after the Bankruptcy Court announced its decision. It then filed a Motion to Stay Pending Appeal with the Bankruptcy Court on July 3, 2018, which was denied on July 9, 2018. Wheeling then filed a Motion to Stay with this Court (ECF No. 15) on August 10, 2018.

mootness allows an appellate court to dismiss a bankruptcy appeal if an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible . . . .") (internal quotation marks omitted). Wheeling did, however, seek a stay from the Bankruptcy Court, as discussed above. In addition, there is no evidence before this Court that the money from the Set-Aside Fund has been disbursed by the Canadian Monitor or that it is otherwise impracticable or impossible for the Estate Representative to recover the money.

## III. CONCLUSION

For the foregoing reasons, the Estate Representative's Motion to Dismiss (ECF No. 2) is **DENIED**.

**SO ORDERED.**

**Dated this 1st day of October, 2018.**

                                                          **/s/ JON D. LEVY**
                                                        **U.S. DISTRICT JUDGE**